# SUPREME JUDICIAL COURT

#### FOR THE

## COUNTIES OF BRISTOL, PLYMOUTH, BARNSTABLE AND DUKES COUNTY, OCTOBER TERM 1844. AT TAUNTON

##### PRESENT:

Hon. LEMUEL SHAW, Chief Justice.
Hon. SAMUEL S. WILDE,
Hon. CHARLES A. DEWEY, } Justices.
Hon. SAMUEL HUBBARD,

---

### Elijah Smith vs. Elijah Swift & others.

A warrant appointing a branch pilot "for the coast of Martha's Vineyard and over Nantucket Shoals," and authorizing him to take certain fees for piloting ships "to the ports of Holmes Hole and Falmouth," authorizes him to pilot ships into Woods Hole in Falmouth, as well as into the other port in Falmouth, and into Holmes Hole in the Vineyard. And parol evidence is not admissible—for the purpose of showing that Woods Hole is not included in such warrant—that by "port of Falmouth," is generally understood the port of Falmouth, called Falmouth town.

Assumpsit to recover $25, fees for piloting the defendants' ship Awashonks from Tarpaulin Cove to Woods Hole. At the trial in the court of common pleas, in the county of Dukes County, before *Warren*, J., the defendants admitted that the plaintiff received from the governor a warrant as pilot, dated December 15th 1838. The terms of this warrant, so far as they affect this case, were these: "We appoint you to be a branch pilot for the coast of Martha's Vineyard and over Nantucket Shoals, with all the powers and duties incident to said

28 *

office, or which may be incumbent on you ; and you are hereby authorized to take and receive, as fees for piloting vessels, as follows :   To the ports of Holmes Hole and Falmouth, for vessels drawing not more than twelve feet of water, twenty dollars ; more than twelve feet, and not more than fifteen feet, twenty five dollars; more than fifteen feet, thirty dollars.   For vessels outward bound, half of the preceding rates."

It was also admitted by the defendants, that their said ship, in the evening of December 11th 1843, came in from sea, from a whaling voyage, and came to anchor in Tarpaulin Cove, and furled her sails, without having been boarded or hailed by any pilot; that after said ship had so anchored on the usual anchorage ground, the plaintiff went on board, announced himself as a pilot, and claimed the right to pilot the ship to Woods Hole, which was the place of her destination ; that the master of the ship declined to employ him as a pilot, or to recognize his right, as such, to carry the ship to Woods Hole ; that said master informed the plaintiff that he should go to Woods Hole and employ another pilot ; that on the next day, the master procured another pilot, and on the day following proceeded with his ship to Woods Hole in charge of said other pilot ; that the plaintiff remained on board the ship, from the time of his first boarding her, until her arrival at Woods Hole, and did not, at any time, decline to assume the pilotage of her.

The defendants also admitted, that the harbor of Woods Hole is within the limits of the town of Falmouth, but contended that the plaintiff was not authorized by the warrant aforesaid to act as a pilot for ships bound to Falmouth.   But the court ruled otherwise.

The defendants then offered evidence, to show that there is another ship harbor in the town of Falmouth, at " Falmouth Town," so called, four or five miles from Woods Hole, and that by the terms, " port of Falmouth," the last mentioned harbor is generally understood.   The court rejected this evidence, and instructed the jury that, upon the facts admitted as aforesaid, the plaintiff was entitled to a verdict, which the jury returned accordingly.   The defendants thereupon alleged exceptions.

*Colby & Clifford,* for the defendants. The plaintiff's authority under his warrant is to be construed strictly. He was appointed a branch pilot only for the coast of Martha's Vineyard, and over Nantucket Shoals. But Falmouth is not within the district assigned to him. See Rev. Sts. *c.* 32, $\S\S$ 5, 8, 9, 10, 42. In *Commonwealth* v. *Ricketson,* 5 Met. 425, the defendant had a warrant like the plaintiff's, but it was held that he thereby obtained no authority to pilot into Boston harbor. A pilot, competent for the coast and shoals mentioned in the plaintiff's warrant, may be incompetent to pilot into Woods Hole.

The tariff of fees, which is added to the warrant, does not enlarge the plaintiff's authority, or, at most, extends it only to Falmouth harbor, as generally understood. And the evidence on this point should have been admitted, in explanation of a latent ambiguity.

The ship was safe at anchor, when the plaintiff went on board ; his services were neither desired nor accepted ; and it is against common right that he should recover for the offer of them.

*Eliot,* for the plaintiff. The governor had authority to appoint the plaintiff to be a pilot for Falmouth, and was authorized by the Rev. Sts. *c.* 32, $\S$ 10, to determine the fees of pilotage, and specify them in the plaintiff's warrant ; and by thus specifying the fees for piloting into the ports of Falmouth, as well as of Holmes Hole in the Vineyard, he has, in effect, as he manifestly intended, assigned Falmouth to the plaintiff, no less than the Vineyard. Section 8 of *c.* 32 itself assigns districts to pilots, in sundry cases, but no specified districts are therein assigned to the pilots of Nantucket and Martha's Vineyard.

The plaintiff was authorized and directed, by Rev. Sts. *c.* 32, $\S$ 7, to take charge of the defendants' ship ; and as he tendered his services as pilot, he is entitled to his fees. *Commonwealth* v. *Ricketson,* 5 Met. 412. 3 Stark. Ev. 1767.

The evidence which the defendants offered was rightly rejected, as the purpose of it was, to *control the terms* of the plaintiff's warrant.

HUBBARD, J.   The claim of the plaintiff is for the pilotage of the defendants' ship from Tarpaulin Cove to Woods Hole ; and the only question is, whether the plaintiff was authorized to act as pilot for ships bound into that port.   This question must be settled by a reference to his warrant of appointment, and to the statute provisions relating to pilotage.   By the terms of his warrant, he is constituted a branch pilot for the coast of Martha's Vineyard, and over Nantucket Shoals, and is authorized to receive fees for piloting vessels to the ports (among others) of Holmes Hole and Falmouth.

By the Rev. Sts. c. 32, § 5, the governor is empowered to appoint pilots for the several harbors and coasts of the State, excepting where special provision is otherwise made, giving to each pilot a warrant for the due execution of his office.   And by § 9, the number of boats to be kept by the respective branch pilots is specified ; among which are four for the coasts of Martha's Vineyard ; and it is required that the said boats shall cruise on the pilot ground of their respective stations.

The defendants maintain that the statute regulating pilotage, and the warrant under which the plaintiff acted, are to receive a strict construction, being made in derogation of the common law rights of the citizens.   Under such a rule of construction, it is contended that Falmouth is not within the jurisdiction of pilots appointed for Martha's Vineyard and Nantucket Shoals, because Falmouth is not united to it by the statute, and consequently an authority is given, in the warrant, which is not justified by the law.   We think this is a mistaken view of the subject.   The laws respecting pilotage are not in derogation or contravention of common law rights.   They are not, in our opinion, connected with, nor do they proceed from, the common law.   They are rather to be classed under the head of the maritime law, which is not the particular law of England, but a part of the law of nations.   This subordinate but highly useful branch of the marine law, regulating pilots and pilotage, has long been enforced by positive statute provisions ; and from the very nature of the subject, these provisions are entitled to a liberal construction, in order to give full efficiency to laws

especially designed to promote the interests of commerce, and to protect the lives and property of the citizens engaged in it.

By the statute, the governor is authorized, with certain exceptions, to appoint pilots for the several harbors and coasts of this State ; and as the ports in Falmouth are not specially designated as attached to a particular district, he may, by force of the statute, assign them to such pilots as are best situated to serve most promptly vessels belonging or bound to those ports. And we think his decision is conclusive as to such designation. But if it were not so, we are satisfied, from the districts created by the act, that to no pilots could the harbor of Falmouth be more appropriately assigned than to those of Martha's Vineyard, and the coasts adjoining.

We think, therefore, that the warrant is not only of sufficient extent to cover the plaintiff's case, but that, by the provision for taking fees for piloting vessels to the ports of Holmes Hole and Falmouth, those ports are specially designated and included in the warrant ; unless there is weight in the defendants' objection that the particular port of Woods Hole was not intended to be embraced within the warrant.

To sustain this objection, the defendants offered to prove that there was another ship harbor in the town of Falmouth, four or five miles from Woods Hole, and that by the terms, port of Falmouth, was generally understood the port at Falmouth town, and that such evidence was admissible on the ground of a latent ambiguity in the description of ports in the warrant. The terms used are, " the ports of Holmes Hole and Falmouth," and it is contended that these words include the single port of Holmes Hole, and the port of Falmouth, which, as is alleged, is not that of Woods Hole. But we are of opinion, that the language used is broad enough to include all the ports in Falmouth, there being more than one, and that Woods Hole, being within that town, and on that coast, and still nearer to Martha's Vineyard, is as clearly designated and embraced in its terms, as the harbor at Falmouth town ; and that there is no latent ambiguity in the description of the ports, which calls for extrinsic evidence to give it effect. And if we had any doubt

on this subject, that doubt would be removed by the fact, that no pilots are assigned for Woods Hole, an important shipping port for valuable vessels employed in the whale fishery, unless they are assigned by the warrant under which the Vineyard pilots are commissioned.

The ship owners of Woods Hole would hardly think a Vineyard pilot, who was directed to pilot vessels to Falmouth, justified in withholding his services in the hour of danger, because Woods Hole was not enumerated, in his warrant, as one of the ports of Falmouth. They would rather insist on a construction which would confer protection, and best subserve the great object of the pilotage laws.

The defendants having failed to show that Woods Hole is embraced within any specified district, or is included under any other branch or commission, or that any distinct provision is made for that harbor, except as a port in Falmouth, the objections taken in the court below cannot be sustained, and there must be judgment for the plaintiff.